May it please the Court, my name is David Copley and I'm here this morning on behalf of the appellants. I'd like to reserve five minutes of my time for rebuttal, please. Your Honors, violating the Foreign Corrupt Practices Act is a grave matter. In this case, Syncor's global bribery scheme exposed the company to the risk of annihilation. Under the FCPA, there are criminal penalties of up to $2 million per violation, jail time up to five years per violation, and in this case, there were hundreds of violations across the world over a period of at least five years. For an FCPA violation, there are SEC enforcement actions, as happened in this case, up to $500,000 per violation, as well as permanent injunctions barring the company from participating in the capital markets. There are shareholder suits exposure, again, as happened in this case. In fact, just recently, a different panel of this Court reinstated the shareholder suit against Syncor based on exactly the same FCPA violations that are at the core of this case. There's exposure under RICO, and there's a risk of devastation of the U.S. business operations. Counsel. Yes, Your Honor. You're not arguing the merits of the case. You're arguing an appeal from rulings under Rule 59 and Rule 60. Are we going to get to that? Yes, Your Honor. All right. Well, there's actually two issues on appeal, Your Honor. There is the underlying summary judgment. Right. And there's also the Rule 59 and 60 issue. Right. I'm starting with the summary judgment issue. I think you should start with the other issue. I'd be happy to. Because we don't really have to consider the summary judgment issues if we rule in your favor on the other issue. Very well. In terms of the settlement, the second issue in this case, the facts are remarkable, to say the least. The parties reached a settlement on all essential terms, and usually judges welcome settlement. This time the judge rejected the settlement out of hand without even considering a motion for preliminary approval, and we argue that this is an abuse of discretion. The plaintiffs sought relief under Rule 60b-6 and Rule 59e, both of which called upon the court to use common sense and equity principles to alter or amend a judgment when it's appropriate under all the circumstances. I'm also understanding that in this particular case the judge ordered mediation. Yes, Your Honor. It's a standing part of the local rules in the Central District that every case needs to go through mediation, and we did that with the court's direction and participation. And, in fact, we sort of ran over the time period that's allowed for mediation in this case, and the court allowed us to do that even though it was a little bit late in the case to finish the mediation process. We worked with nationally recognized mediator Eric Green, professor on the East Coast, and Professor Green helped the parties work through the year-end holidays to reach a settlement in the case, and we did so. And I understand on this record that you, upon determining that you had mediated successfully this case, complied with the local rules about how to give notice to the court. Yes, Your Honor. Within minutes of having the settlement agreement signed by all the parties, myself and opposing counsel called the court's chambers to notify the judge that we had reached a settlement. We left a message on his voicemail. Within one or two hours of leaving a voicemail with the court, we had delivered a letter to the court, again informing him that a final settlement had been achieved. And then the next day we submitted a signed stipulation, again advising the court that a settlement had been achieved and asking the court to take all dates off calendar. While all this was happening, as the record shows, things were crossing in the mail, and the judge was finishing his ruling on summary judgment, sending that to the court. Does anything that happens after you entered into the contract to settle the case matter in terms of contract law? I'm sorry, Your Honor. Could you repeat the question? Well, in terms of contract principles which apply to settlements, does it matter? Does anything matter? What happened after you reached a settlement in good faith in front of the mediator matter in terms of whether or not you had a binding contract with the other side? No, Your Honor. As a matter of contract law, there was a meeting of the minds on all essential terms, and that is a contract that would be enforceable. The problem that we have in this case is that it's a class action case. So the party's settlement, the contract, isn't enough. There's an additional step. It's still a binding contract. It just needs to be approved by the court. Exactly. The contract, however, did say that you'd get it approved by the court, did it not? Yes. As a part of the contract. As a part of the contract, and that's a condition subsequent. Ninth Circuit laws are very clear that you can reach an agreement. It can be a final agreement. It can be binding, even though there are conditions subsequent, such as court approval, which is required under Rule 23 anyway. But you knew, did you not, both parties knew, that you were taking a certain amount of risk that the court would decide this issue, because it was under submission, at any particular time? Absolutely. And both parties took that risk. Right. So he did decide it. Yes. Is it your point that it is, as a matter of law, an abuse of discretion for a judge who has decided the issue to fail to withdraw his decision because an agreement of settlement has arrived, been arrived at by the parties? No, Your Honor. And that actually hits on a very, I think, critical distinction in this case. No one asked Judge Klausner to withdraw his summary judgment ruling. He issued an order in the case, just like there were other orders issued in the case, granting class certification, denying the motion to dismiss. There were numerous orders in the case, and none of those orders needed to be disturbed. What we asked the judge to do was set aside his final judgment. Well, not enter final judgment, because he didn't have to. He could issue his memorandum decision and docket it, like every other order. Absolutely. And it's not until he enters the judgment, at least under our unique local rules in the central district, that it matters. So he just you just didn't want him to enter final judgment. Exactly. And what the Court did on January 12th, two days after the settlement and the day after we asked that he submitted the stipulation, he entered the final judgments  And that, you say, is an abuse of discretion. Let me be arguing for the judge for a second. Here he's done all this work. He has it under submission for over a month. He's gone through all the pleadings. He's finally come to a conclusion, not the one you'd like, but nonetheless to a conclusion. And he figures, in the exercise of my judicial function as a government functionary, I have decided. Now, these folks could have settled this case three days ago, and that would have been different. But now I've decided, and now that's the law, and now I'm going to enter this. What's wrong with that? The problem with that is there are actually five reasons that that is an abuse of the Court's discretion. Number one, it was error for the judge to substitute his valuation of the case for the party's valuation of the case. Why? You had asked him to do that by making a motion of summary judgment. Well, the other side moved for summary judgment. Well, but so why is it error to do exactly what the other side asked him to do? No, it was not error for the Court to rule on the summary judgment motion. However, it was error for the Court to let that decision blind him to the fact that the parties actually reached a meeting of the minds and settled the case before either side had any reason to know that the Court had actually made a decision on the case. Secondly, it was error for the Court, an abuse of the Court's discretion, to obstruct the settlement. Once the parties had reached a meeting of the minds and settled the case, the Court should have honored the settlement or at least considered it on a motion for preliminary approval. There's no such thing as a settlement that's too late. Even after merits motions had been made and motions rulings had been made, there's no such thing as a settlement that comes too late. Thirdly, it was an abuse of the Court's discretion to deny a fairness hearing for the certified class. Under Rule 23, a court is required to give a fairness hearing when the parties come to him or her with a proposed settlement. That is the only way to protect the interests of absent class members as a matter of due process. And in that process, the Court takes off his or her hat as a summary judgment judge and puts on his or her hat as a fiduciary. But isn't it true also that the only reason this judge had any right to say yes or no about this settlement, in effect, is because of Rule 23? Yes, Your Honor. Because in every other civil action, if you'd have settled the case and you hadn't had to take it up there for Rule 23, it had been done. And what the judge would have done or didn't do or all the work he put into it or didn't put into it wouldn't have made a bit of difference. But the only reason you had to go to this judge was Rule 23, class action rules. And what is the reason you go for Rule 23, class action rules? The reason that you go to the judge under Rule 23 is to protect the interests of absent class members. Because the question, in fact, the Ninth Circuit standard on this is the Court reviews the settlement to see if it's fair, adequate and reasonable. You're looking out for the absent class members to make sure there's no collusion, that it's not a funny money coupon settlement, that the lawyer isn't getting all the money and the class members are getting zero. The judge puts on his or her fiduciary hat to make sure that the settlement is adequate. The judge isn't asking whether the defendants paid too much. That's the wrong question. The Court is asking whether the defendants paid enough and paid it to the right people. The whole point of it is to protect the plaintiff's class. It's not about whether the defendants in the judge's mind are guilty or not guilty. Absolutely. Absolutely. So when the Court is under Rule 23 and when the Court is looking at a class action settlement, the question is, is the settlement sufficient and does it adequately protect the interests of the class? And the judge in this case, the district court, never took that step. He never thought about whether the settlement that had actually been reached in the case. That was obvious why he was not doing it. He thought you didn't have a case. That's true. So there's nothing to safeguard the plaintiffs if the plaintiffs don't have a case. But that's where, again, the Court made another, I think, significant error. The judge substituted his valuation of the case for the party's valuation of the case. The parties were very close to this matter. They mediated long and hard for more than a month. They reached a meeting of the minds. They agreed on all material terms. They signed a settlement sheet. That is the agreement that should have been honored. But isn't the real abuse of discretion not that he made a decision or that he worked hard or that he might like his decision more but that he has a rule under Rule 23? And now he has, prior to entering judgment, a settlement in front of him, having followed all of the rules of the local rules, and now he has everything in front of him. And pursuant to the rules, he has a duty under Rule 23 to take that, have the hearing. And he wouldn't have the hearing. Isn't that the abuse? That is the abuse of discretion, Your Honor. We argue that under Rule 23, he had a duty to consider the fairness, adequacy and sufficiency of the settlement agreement. And he, we asked, we filed a motion asking for preliminary approval. He wouldn't give us a hearing on that. We asked him to alter or amend the final judgments that had been entered on January 12th in order to reopen the courtroom doors to let us bring that motion. The judge said it was too late. It was all moot. That was an abuse of the court's discretion. And I have no doubt that the court was heavily invested in the summary judgment order. He spent a lot of time working through that. The record was this thick. But that doesn't excuse the court's abuse of discretion. When the parties come to the court with a settlement agreement, it is the court's function to, under Rule 23, to have a fairness hearing to see if that settlement is reasonable and adequate. Even if the court thinks the case is worthless, that doesn't really matter, because the question under Rule 23 is fairness, reasonableness and adequacy. Do you want to spend a minute on your second point? I would, Your Honor. The other point has to do with ERISA law, which is an area that is close to my heart, but it is an enormously complicated area of the law. The problem with the court's summary judgment ruling is, to put a short point on it, that he applied the wrong standard. In company stock cases under ERISA, there are basically two lines of authority out there. There are cases, which we refer to as the Type 1 cases, where an ERISA fiduciary engages in criminal or fraudulent conduct that makes the ownership of company stock a legitimate investment, and the Enron case is an example of that. There's another line of cases we call the Type 2 cases, in which there's no criminal conduct, there's no fraud, that the stock goes down, and the prudence of company stock as an investment in the ERISA plan is challenged. What the court did in this case, fundamentally, was that he was using a Type 2 reasoning in a Type 1 case. He was taking language from this court's decision in Wright, in which there was no crime, there was no fraud, there was nothing. In fact, it wasn't even a prudence question, because it was a plan design question, and the court tried to shoehorn that reasoning into a situation with very different facts, where there was criminal conduct, and that's why I started with the FCPA violation, serious criminal conduct. And it's simply an improper use of the standard to try and shoehorn this. How do you respond to the defendant's argument that they had no obligation to diversify, and that even though there was this criminal conduct by a small subsidiary, which ultimately had to pay a $2 million fine, which was reimbursed, it really didn't affect the value of the plan at all? Well, the court really did focus on the question of value. And again, that is an improper standard under this court's ruling in Wright. The question is not financial viability, which is what Judge Klausner used in his reasoning. When there is criminal conduct, you can never presume that the fiduciary's conduct was prudent. How can you presume that criminal conduct was prudent? That's an absurdity. That cannot be the law. No court of appeals has ever said that is the law. Well, is there evidence, or is there a genuine issue of material fact as to whether the plan administrators knew of the criminal conduct? Absolutely, Your Honor, and that's in the record. If you go back to the plea agreement in this case, which was Sinkhore, Taiwan, entered into a criminal plea agreement, which is a binding admission, that plea agreement included a stipulation that the criminal information was true and correct, and also that an associated statement of facts was true and correct. And if you go to the record, CR 179 at pages 337 through 338, page 342, page 343, there are stipulations in that guilty plea that the chairman of the board of Sinkhore, Taiwan, Monty Fu, who is also the chairman of the board of Sinkhore International and one of the fiduciaries that we're suing as a fiduciary of the ERISA plan, personally authorized the illegal payments. The illegal commissions were specifically authorized by Mr. Fu. The illegal referral fees were specifically authorized by Mr. Fu. And Sinkhore headquarters, who is another ERISA fiduciary that we're suing in this case, received reports concerning the illegal conduct. So all of this knowledge is an established fact by virtue of the plea agreement and the associated documents. You're eating up your rebuttal time. Let me just make one more point and then I'll close, Your Honor. Thank you for reminding me. Going back to the issue of financial viability, not only do we argue that the court applied the wrong standard, which is unduly formulaic, but we think he got the facts wrong. There were genuine disputes of material fact in this record on financial viability. We submitted reports from three experts, Carla Haynes, Scott Hakala, and Saul Solomon, all of which are in the record. The court ignored those, and those records talk about damages. They talk about materiality. They talk about causation. The court ignored all of the expert testimony, and he made his own analysis based on looking at the stock price chart. But the stock price chart doesn't tell you the whole story. The experts explain why that is the case. The judge substituted his, what he thought was common sense, for expert testimony, but that cannot make a genuine dispute of material fact go away. Even if financial viability was a proper standard, and it's not, there were facts in this case that precluded summary judgment.  Thank you. I'm going to give you some extra time since we asked you so many questions. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. What I'd like to start out with is to address what appears to be- You are Mr. Floyd. I'm sorry. My name is Mr. Dan Floyd, and I'm representing Syncor and Robert Funari. Apologize. What I'd like to start on is- In the litigation department of Gibson downtown. Yes. Did you participate in the settlement discussions and the mediation personally? Yes. You were personally involved in this? Yes, I was. I'm the person who signed the term sheet. All right. Did you understand that when you entered into a settlement agreement that was conditioned upon the judge's approval, that you had an obligation to go get the judge's approval? We cooperated with counsel in calling the clerk. We signed the stipulation. At that point, the judge made his determination. Right. If there was no judgment, why did you think that it was appropriate at that point to completely abandon the settlement agreement and oppose any efforts of the people who had negotiated with you in good faith to go get Rule 23 approval? Why did you think that was the appropriate thing to do? Because the judge had entered the ruling- Because the judge rolled in your favor? Because the judge rolled in your favor and you thought, oh, wow, we can get out of this settlement? No, Your Honor. You know, this is not a very honorable posture for you to be in. I have many, many close friends at Gibson Dent and Crutcher who are partners, former partners, retired partners, and I'm really surprised, I have to say. Your Honor, what we did was we argued the legal effect of the terms of the settlement and the judge's ruling. We in no way, we did not in any way argue against what it is we had signed, what the terms were. I believe it is appropriate and honorable to argue the legal effect of disseminations of the judge under the rules. So the legal effect of the judge issuing the judgment was, in your mind, that he was absolved of his responsibility and you were absolved of your responsibility under the settlement to go get approval under Rule 23. You argued that? Well, let me explain what I'm arguing, Your Honor. No, what you argued before the judge. What we argued before the judge was that having entered a judgment on the merits that we believe was procedurally proper, that under Rule 60B there was not a manifest injustice or the extraordinary circumstances under Rule 60B that required him to vacate the judgment. And at that point, the agreement, the term sheet is what it is. So now you seem to be backing away from what you said it was when you filed, jointly filed the document notifying the court of the settlement agreement. I noticed throughout your brief what was a settlement agreement after lengthy mediation has now become a purported agreement, an alleged agreement. Did you not, in fact, enter into a settlement agreement? We entered into the term sheet, which is in the record. We never said we didn't enter into the term sheet. You're not going to say you entered into a settlement agreement, even to me now? You're not going to say that? What I said, Your Honor, is we are that term sheet, we entered into a term sheet which has terms and obligations which we believe. Answer my question, counsel. Did you enter into a settlement agreement or not? We entered into a term sheet. That's the legal document we entered into. You can go with that answer, but it's not a very winning answer. All right, Your Honor. What I'd like to address is. Well, and frankly, it seems to me the only reason this judge had anything to do with this particular case is because it was Rule 23, isn't it? I mean, in every other settlement we have of civil cases, and I've been on the district bench in Idaho, and I appreciate I'm a long ways from here, so I don't know how you do things down here. But if people settle cases in civil suits, they don't come and ask me for permission, and I've written a lot of summary judgments and got them right up to the bottom line, put my signature on them, and they call me just before I send them out, and I've put in all that time, and it's done. And the only reason this judge had anything to do with this case at all was Rule 23, that he had to protect some people who weren't parties, and everything gave them some rights under this agreement, and you said it's a fair and equitable statement, and then this judge says I'm not going to hold the hearing. The statute and the rules says I have to hold, and I'm going to say I'm going to enter my judgment. The rule says I've got to hold the hearing. Everything says I've got to do it, but I'm just going to ignore it and go with my summary judgment. And you didn't stand up and say the rule says you've got to have a hearing, Judge? Your Honor, at the time the judge entered the settlement, that's the issue, okay? When the time the judge entered the judgment, okay, at that moment, he did not have any settlement agreement, any term sheet, anything in front of him. Just wait a minute. Oh, no, that's not true. January 11th, by January 11th, 2006, he had not only received a call on January 10th, he had before him a letter which was sent that same day, January 10th, and the order was not entered until January 12th. He did not have the agreement, the term sheet. He didn't have an agreement, but he had a letter written by both you and counsel saying this case is settled. The term sheet is details. Well, it's more than details, Your Honor, including the term sheet itself. The party said that the final settlement agreement would have to still be prepared and sent to him. The issue is as far as the term sheet and the final settlement agreement, that was relevant only, as Judge Smith indicates, for the Rule 23 hearing to see if it was fair and just to everybody around. But settled, the case was settled. Wright Miller, 7B, Section 97.5, says, Rule 23 is initiated when you provide a court with a settlement agreement, when the court can see the settlement agreement. You had a certified class whose rights had been settled, and all that remained was for the judge to determine that a class he'd already certified was being treated fairly. I think there's more to it than that, Your Honor. I'm going to give you an example. I kind of come from it, come to this from a slightly different perspective, but it's all in the public, so I'll relay it to you, and you can just tell me how you think this is different. I issued an opinion called Jones v. I wrote it to other judges. One judge was with me, one judge dissented. Jones v. The City of Los Angeles. PFRs were filed, petitions for re-hearing en banc. One party asked Ninth Circuit mediator, similar to your situation, to mediate the thing. The thing's mediated for well over a year. We get a letter. The letter says we have reached an agreement in principle. It's subject to the court vacating its opinion. Now, frankly, not only was I invested in that opinion, I had written it, and it had been published on the books for almost two years by now. But my interpretation of that it was settled and a condition of the settlement was that I vacate the opinion. I determined the case was moot because it was settled, and the only thing left for me to do was to vacate the opinion because there was nothing left to pursue. How is your case different? I do not quarrel with the discretion of a court faced with the circumstances that you faced. I don't think I had any discretion. I think there was no longer any jurisdiction. In this case, again, when Judge Clouster made his decision to enter the judgment, all right, he did not have a settlement agreement in front of him that he could look at. That's not necessary. I mean, there wasn't a settlement agreement. If the parties say the case is over subject to one thing happening only, the case is over. It's the party's case. It's not up to the judge to say, oh, but I like my opinion. I wanted to stay on the books or to be out there for other people to look at. But there is another issue. Judge Clousner is in the central district managing a caseload of several hundred cases. There are local rules. He has local, local rules that says how you are supposed to put things in front of him and what he wants to know. He doesn't want to make a decision in running his courtroom. Morgan Clerk is one of those ways, as I well know from having been a district court judge in the central district. But he wants to immediately call the clerk immediately upon settlement. The local rule says, and his local, local rules say, if you want to interrupt the progress of a case, you have to do it by written means and you have to provide the factual foundation. Now, in this instance, at the time he was deciding, I don't quarrel that a judge could reach the different conclusion, that a judge could have a philosophy in managing the caseload and saying in favor of it if I hear part of it. I don't think that's your best answer in my knowledge. I think the best answer was given by my law clerk, which is there was one thing left to do so the case wasn't moved. And the question is whether he had the duty to do that one thing once he knew there was a settlement. It is not even clear to me at the time the judgment was entered that the judge himself was aware of the settlement. But in any event, under the rules. Was there anything under the local rules that had been left to be done by those who had settled the case? There were a couple things. One was to put the term sheet in front of the court. The second was to negotiate out the final settlement agreement with the participation, the final terms of the formal settlement agreement that would be But the terms of the final settlement agreement is just the lawyers papering up what had already happened. They had followed the rules to the letter. The only reason he had anything to do with this was because he had some Rule 23 function he was to propose. And he then said, I won't do it. Even though the rule says he should. Not after he has entered a valid judgment on the merits. But he hadn't entered the judgment when you filed on January 11, the notice of settlement, stipulation, proposed order, raised settlement, taking trial date, off calendar, and motions for summary judgment. In fact, the judgment was filed with the clerk on the 11th and entered on the 12th. So it wasn't entered. So you file a stipulation at the window, for example. It doesn't, that doesn't mean that instantaneously the judge has it in his hand or knows about it in any event. But even if you have a stipulation, it does not contain. In this case, it was hand, first you hand deliver a letter to the chambers. You call the clerk. You think the judge doesn't. I mean, I can't. Even if he didn't know about it. Afterwards. And I believe he probably didn't know about it. Just how, just from how things work around there. But even if he didn't. And afterwards, when he found out that you had actually filed that document on January 11th, shouldn't he have withdrawn the entry of that judgment? He had entered a judgment on the merits procedurally proper. He did not, he did not have to withdraw it. He could have. I assume he could have. He chose not to. The first time he saw the term sheet was after he had entered the judgment. So you come to a court and there are judges who, when people say they've settled a case, accept that and take everything off calendar and don't move forward. Other judges don't. He has very specific rules. His job as a district court judge in his inherent power is to establish policies and procedures to run his courtroom. He doesn't hide them. But I'm going to be fair with you, counsel. All that job is true. However, Rule 23e of the Federal Rules says he must approve any settlement, voluntary dismissal or compromise. And having gone along with what the local rules were about how to inform him of the settlement before entering the situation, the abuse of discretion is that he filed to follow the rules. I mean, even if he has a judgment. I disagree. Where is the case law that says that? Give me one case that says what you're arguing. Well, what I'm arguing is that you have to, if you want to invoke a settlement process before a court properly where the court has no discretion, you need to put an agreement before the judge that the judge can act on. Otherwise, you can say, I will give you, we will give you something in two weeks. We'll give you something in a month. Have we got any case that suggests what you're arguing? I think that in the Ninth Circuit, the Ninth Circuit standard is recently, last year on why, when you have to vacate a judgment, says that it's got to be something, it's got to be manifest injustice and something you could not have stopped or that you didn't have control over. In this case, with a case, a summary judgment motion pending for a very long period of time, a case going to trial very quickly, very soon, with a very large caseload and cases set for trial the way through, to say, for a judge to say to himself and to the litigants, if you want to resolve this case, you want to take this off calendar, you want to stop me from doing my job, then what you need to put in front of me is an agreement that I can look at, that I can review, and I can feel comfortable that that agreement is sufficient and appropriate for me to go forward under Rule 23. You invoke Rule 23 properly and take away the judge's discretion by providing the agreement, period. He did not get the agreement, any form of the agreement until afterward. Let me ask you. He made that decision. Let me change the issue then. If that's your decision, why is it that he had any ability under Wright to change the general argument about the prudence of investing stock? We're not, first of all, I don't think Munch is the Ninth Circuit law after Wright because they tried to go around it. But the general prudence under the RISA is pretty straight. And if someone, under the facts situation that I have to take, is investing in stuff they know is artificially inflated because they're giving bribes to foreign governments, what can I suggest is the way to get out of a prudence determination on summary judgment? The law that applies here is Section 1104A2, which says if you have an EIAP, which is what this is, conceded it's what it is, that your duty of prudence to the extent you have no obligation to diversify. You have a plan that is required. I mean, what it has basically is a stock, most of it is a stock bonus plan. People who contribute to the plan, either by buying some portion in Syncor stock or by investing in a 401k component, get shares. I mean, they're just matched. Most of the shares that were provided in this plan were free. So the issue and what the Wright court dealt with and what the Munch court dealt with and these courts have dealt with is it's not a question of any time there's a material adverse problem with a company, even undisclosed, means that you have to override the plan. Because every stock, every company in the world has a myriad of legal exposures. Right now you can look in the paper and you can read Merrill Lynch declare losses of $8 billion. The fact that this involved FCPA. But the Merrill Lynch losses, we're not talking about violations of the Foreign Corrupt Practices Act and disputed questions about whether the plan administrators knew about that. But let's look at what this, as Your Honor pointed out in the argument before, what the ultimate resolution was. This was a situation where in part of it you had already had an agreement for a merger which was going to provide and which ultimately did provide benefits to every member of that plan. As part of the due diligence they discover payments that they are concerned about. Syncor does its own investigation, goes to the government. This isn't a situation where the government came down and investigated, where the government, where anything was pending, where there was anything, the underlying facts are this involved payments to doctors, oversees both private and public. It's the public doctors that were ultimately concluded by involuntary settlement negotiations with the DOJ. The DOJ concluded that they could be considered government officials for purposes of the FCPA. The amount of the fine, which was $2 million, which was reimbursed, reflects, I believe, the overall nature of the problem. Simply because you have a label. There are all sorts of exposures out there, both civil and criminal. I mean, you just can't put a label on one and say because in hindsight a company self-reported, resolved the problem very favorably, ultimately sold itself to another company in a way that was very profitable to everyone who owned stock, including every member of that plan, to say, well, because it involved, there was uncharged criminal conduct, it was imprudent to have that, to provide stock matches or really frankly to have a plan at all. I think it doesn't make sense and it's not correct under Wright. Well, frankly, I don't see where under Wright you find that law. Because Wright starts right out and says, ERISA requires a fiduciary to discharge his duties with the care, skill, and prudence and diligence under the circumstances then provided. And then it says, if you go further, the only thing that Munch does is says that that doesn't necessarily on its face say that one who should invest in stock is not a fiduciary, that that gives him an equitable standard, something above the normal, if it's that kind of a plan to continue to invest. But that doesn't take away any place in Wright. It doesn't take away from the general prudence that one invests in a plan which he knows has stock that's inflated because he's been giving bribes to foreign governments. And I'm not suggesting that you can't, given your excellent expertise, go to the about what has to happen. But we're talking summary judgment here. We're talking prudence. And we're talking what your clients did, full well knowing, giving them every benefit of the doubt, that they were investing in stock of companies who were bribing foreign officials. And you're suggesting that on that, I should say, there's no question of fact about prudence. And I think if you look at what Wright is really saying is that there's a stock in these plans. But that is for diversification, not for general prudence. Every company is risky. Every company has potential legal exposures. And that kind of standard means the law. I mean, there's a distinction. My goodness. There are many kinds of. You can't analogize this to a company that's not violating the law. I mean, the idea then that any company, any company cannot have a risk of stock plan if there are uninvestigated, uncharged, potentially criminal problems. In this case, they were ultimately resolved very favorably. If there's evidence, let me just say, you make a really good jury argument. So probably you should save it for the jury. Well, okay. It'll be in front of Judge Klausner because there's no jury in the ERISA cases. But I appreciate it. That's right. That's right. Maybe it won't be. Maybe the settlement will be enforced. Okay. Thank you, Your Honor. Thank you. I'll give you one more minute because you're over your time. I'd like to just close with two points. Hopefully I can make both of them in one minute. On the settlement issue, there's one other consideration here that is in our brief, and I didn't get a chance to touch on it earlier. But by refusing to have a Rule 23e hearing, the district court deprived the plaintiff class of any avenue to enforce the settlement agreement. Under the Kocan and Supreme Court case, usually you can take a settlement agreement and you can go enforce it in state court. And so even if the federal court doesn't want to enforce it, you have another avenue to go seek some relief. We can't do that here because it's a federal class action. Only the district court could approve the settlement. And it's an ERISA class action. Only a federal court can approve the ERISA class action. Can't you dismiss voluntarily and go sue in a state court? No, we can't, Your Honor. Not under ERISA. Because ERISA has exclusive jurisdiction. It's exclusive federal jurisdiction for ERISA. So we had no way out. And that just compounds the error here. Going back to the ERISA standard, I want to commend the court's attention to the recent Fourth Circuit decision in DeFelice v. U.S. Airways. That's reported at 497. Could you put that on a piece of paper and give it to the clerk? Of course. It's a 2007 decision. And the critical language in DeFelice is the whole idea of hindsight.  Therefore, there's no question of prudence. And DeFelice reviews the literature and makes it very clear, you cannot use hindsight to make a decision that was imprudent at the time it was made transformed into a prudent decision. A fiduciary making a decision cannot assume everything's going to turn out for the best. In fact, a fiduciary needs to assume the worst and take protective action to protect the assets of the trust. Stock recovery is admissible to show lack of damages, right? Absolutely. But not to show lack of prudence. And that's where the district court made a critical error. All right. Thank you, counsel. Thank you, Ron. The case of Pilkington v. Thank you very much for your argument. Submitted. Good case. Good argument. Thank you. And thank you, counsel.
judges: Wardlaw, Bea, Smith